**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

VIRGIL HALL,

            Plaintiff,

        v.

FEDERAL BUREAU OF PRISONS, *et al.*,

          Defendants.
_____

Civil Action No. 14-1082 (RBW)

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the Defendants' Motion for Summary Judgment.  For the reasons discussed below, the motion will be granted.

### I.  BACKGROUND

In the United States District Court for the District of Utah, the plaintiff was indicted, tried and found guilty of one count of possession with intent to distribute cocaine.  Complaint ("Compl.") at 2.  That court imposed a sentence of 120 months' incarceration, *id.*, and the plaintiff currently has been designated to serve his sentence at the Federal Correctional Institution in Loretto, Pennsylvania, *id.* at 1.

The plaintiff brings this civil action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, and the Privacy Act, *see* 5 U.S.C. § 552a.  He alleges that the Federal Bureau of Prisons ("BOP"), the United States Marshals Service ("USMS") and the Executive Office for United States Attorneys ("EOUSA") violated the FOIA by failing to respond to his requests for copies of his criminal indictment and judgment and commitment order ("J&C") bearing the appropriate signatures and court seals.  *See* Compl. at 3-4.  Further, he alleges that the defendants

1

violated the Privacy Act by making adverse determinations "to hold, try and imprison [him]," *id.* at 3, based on an indictment and J&C he deems incomplete, inaccurate or incorrect, *see id.* at 3-4.  He demands damages of $1,000.  *Id.* at 4.

### A. Requests Submitted to the Federal Bureau of Prisons

The plaintiff submitted two requests under the FOIA and the Privacy Act to the BOP. Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem."), Declaration of Donna Johnson ("Johnson Decl.") ¶ 2.  First, the plaintiff sought "Page[s] 1 and 2 only of the original certified Judgment & return showing commitment executed by U.S. Marshal or his deputy."  Johnson Decl., Ex. A (Freedom of Information Act & Privacy Act Request Number ("No.") 2014-09029 dated February 10, 2014) at 1.  His second request sought the same information.  *Id.*, Ex. B (Freedom of Information Act & Privacy Act Request Number 2014-09030 dated March 18, 2014).  Although the plaintiff claimed that no such document existed, by "asking to correct the records," *id.*, Ex. A (Attachment to Request No. 2014-09029) at 3, BOP staff construed the request as one to "amend[] his judgment and commitment order to bear the signature of a U.S. Marshal's deputy," *id.* ¶ 2.

The BOP consolidated the plaintiff's two requests, *id.* ¶ 4, and denied them based on the following explanation:

> Attached to request 2014-09029 are two handwritten pages that illuminate this matter.  In the fourth paragraph of the first handwritten page, you state that, "unfortunately, there is no original executed and return of a Judgment & Commitment by a U.S. Marshal . . . ."  Essentially, you state that the record you have requested will not be found.  In your second handwritten page, you further allege that a properly "certified" judgment does not exist.
>
> Your filing in 2014-09029 plainly shows that you do not request an agency record; you merely complain that a record does not exist.  To

the extent these request[s] can be construed as Privacy Act requests to amend the judgment and commitment order[], your request is denied.  Your Central File documents are exempt from the Privacy Act's amendment, accuracy, notification, and civil remedy provisions.

*Id.*, Ex. C (Letter to plaintiff from Michael D. Tafelski, Regional Counsel, Northeast Regional Office, BOP, dated August 22, 2014) at 1.

"Judgment and commitment orders relevant to an inmate are maintained in the BOP's Inmate Central Records System."  *Id.* ¶ 3.  The defendants represent that the BOP located and released a copy of the J&C to the plaintiff with its summary judgment motion.  *See* Defs.' Mem. at 6.

### B.  *Request Submitted to the United States Marshals Service*

According to the plaintiff, he filed a FOIA/Privacy Act request with the USMS and received no response.  Compl. at 4.  However, USMS staff conducted "a search of the FOI/PA tracking records" using the plaintiff's name as a search term, and "[n]o records of any requests from the [p]laintiff were located."  Defs.' Mem., Declaration of William E. Bordley ("Bordley Decl.") ¶ 4.

### C.  *Request Submitted to the Executive Office for United States Attorneys*

The plaintiff submitted a request to the United States Attorney's Office for the District of Utah for "VIRGIL HALL'S INDICTMENT CASE NO. 2:10-cr-01109-TS AND REQUESTING THAT THE PERSON WHO SIGNED BE IDENTIFIED AND SHOW HIS AUTHORITY." Defs.' Mem., Declaration of Tricia Francis ("Francis Decl."), Attachment ("Attach.") A (Freedom of Information Act & Privacy Act Request dated April 9, 2014) (emphasis in original). The request was forwarded to the EOUSA for processing, Francis Decl. ¶ 5, and the matter was returned to the Utah office "in order to conduct a search of the requested records," *id.* ¶ 6.

Paul Kohler, the Assistant United States Attorney ("AUSA") assigned to the plaintiff's criminal case, *id.* ¶ 7, understood the plaintiff's "request as seeking the original Indictment in part because he had already filed a habeas corpus petition . . . in which he complained that the court lacked jurisdiction because the Indictment . . . did not have the foreperson's signature and the AUSA's signature was illegible," Defs.' Mem., Declaration of Paul Kohler ("Kohler Decl.") ¶ 4.  AUSA Kohler located a copy of the original indictment bearing the grand jury foreperson's signature, Kohler Decl. ¶ 6, and provided a copy to the EOUSA, *id.* ¶ 7.[1]  EOUSA staff withheld the foreperson's signature pursuant to FOIA Exemption 7(C) and sent the redacted document to the plaintiff.  Francis Decl. ¶ 9; *see id.*, Attach. F (Letter to the plaintiff from Susan B. Gerson, Assistant Director, Freedom of Information & Privacy Staff, EOUSA, dated October 22, 2014)

## II.  DISCUSSION

### A.  *The Plaintiff's FOIA Claims*

#### 1.  Summary Judgment Standard

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citation omitted).  Courts will grant summary judgment to an agency as the movant if it shows that there is no genuine dispute as to any material fact and if the agency is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  More specifically, in a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute

---

[1] AUSA Kohler initially believed that "the original Indictment was stored only with the United States District Court (not the United States Attorney's Office)," leading initially to the issuance of a "no records" response to the plaintiff.  Kohler Decl. ¶ 5.   He later "learned that [the United States Attorney's Office for the District of Utah had] a copy of the original Indictment . . . signed by the foreperson[.]"  *Id.* ¶ 6.

and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and non-conclusory," *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotations and citations omitted), and when they "[d]escribe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. DOJ*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

2.   The Defendants Conducted Reasonable Searches for Responsive Records

"The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted). An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (internal quotation marks and citations omitted). A search need

not be exhaustive, *see Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1995), as long as the agency conducts "a search reasonably calculated to uncover all relevant documents," *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010). And a search is not legally inadequate merely because it yields no responsive records. *See Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (stating that "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate").

To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of its search. *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id.* If the record "leaves substantial doubt as to the sufficiency of the search, [then] summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

Neither the BOP's nor the EOUSA's declarant explains the method by which he or she searched for the records the plaintiff requested.[2] However, the defendants demonstrate, and the plaintiff does not dispute, that a copy of his indictment and J&C have been located and released to the plaintiff. The plaintiff instead challenges the supporting declarations themselves and the contents of the records released to him.

---

[2]  According to the plaintiff, he did not ask the BOP to amend the J&C. *See* Pl.'s Opp'n at 3. Rather, in an inmate grievance, the plaintiff asked the BOP to verify information in its records by forwarding the J&C to the USMS. *See id.*, Ex. Six (Central Office Administrative Remedy Appeal dated April 22, 2014). The BOP allegedly failed to do so, and its inaction explains why the USMS had no record of a FOIA/PA request from the plaintiff. *See id.* at 3. The plaintiff thus concedes that he did not submit a FOIA request to the USMS, and for this reason, summary judgment will be granted to the USMS.

The plaintiff notes that none of the declarants is responsible for maintaining custody of the original records he requested. *See* Plaintiff [O]pposes/[R]epl[ies] to the Gov[ernment's] Motion [f]or Summary Judgment and [A]sk[s] to [S]trike [A]ll [I]nsufficient [D]efenses ("Pl.'s Opp'n") at 2-3. In a FOIA case, an individual with knowledge of the handling of the plaintiff's request is a qualified declarant. *See SafeCard*, 926 F.2d at 1202 (ruling that employee "in charge of coordinating the [agency's] search and recovery efforts [is] most appropriate person to provide a comprehensive affidavit"); *Holt v. DOJ*, 734 F. Supp. 2d 28, 38 (D.D.C. 2010) (accepting agency's declarations where "each declarant has stated his or her familiarity with the component's procedures for handling FOIA and Privacy Act requests, and each declaration is based on the declarant's review of the component's official files"). Here, each declarant attests to his or her familiarity with the FOIA generally, the plaintiff's FOIA requests specifically (or in the case of the USMS, the allegations of his complaint), and each entity's response to the plaintiff's requests. *See* Johnson Decl. ¶¶ 1-2; Bordley Decl. ¶¶ 1-2; Francis Decl. ¶¶ 1-2; Kohler Decl. ¶¶ 2-4. Agency declarations generally are entitled to a presumption of good faith, *see, e.g., Ground Saucer Watch v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981), and the plaintiff fails to rebut the presumption.

Next, the plaintiff appears to argue that the defendants violated the FOIA by failing to identify the person who signed the indictment on behalf of the United States Attorney for the District of Utah, failing to verify that the person was authorized to do so, and by failing to produce a J&C bearing the court's seal, the clerk's signature, and execution by a United States Marshal. Compl. at 3-4. However, an agency is not obligated under the FOIA to provide answers to a requester's questions. *See, e.g., Jean-Pierre v. Bureau of Prisons*, 880 F. Supp. 2d 95, 103-04 (D.D.C. 2012) (concluding that request for objective pieces of information, such as

"who gave the order" and "on what day," are not "cognizable under FOIA, because they ask questions calling for specific pieces of information rather than records"); *Adams v. FBI*, 572 F. Supp. 2d 65, 66-68 (D.D.C. 2008) (finding that agency has no obligation under FOIA to answer question as to whether particular FBI laboratory technician was involved in the examination of DNA evidence in the requester's case); *Francis v. FBI*, No. 06-0968, 2008 WL 1767032, at *5-6 (E.D. Cal. Apr. 16, 2008) (magistrate's recommendation) (finding that requester who asked agency to identify person in photograph did not submit proper FOIA request). Nor must an agency offer explanations of responsive records, *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 162 (1975) (holding that "insofar as the order of the court below requires the agency to create explanatory material, it is baseless"), and an agency's response need not comport with criminal statutes, rules or procedures, *see, e.g., Marshall v. FBI*, 802 F. Supp. 2d 125, 136 (D.D.C. 2011) (discussing differences between agency obligations under the FOIA and government's obligations in criminal proceedings). Here, the defendants responded to the plaintiff's FOIA requests by producing copies of the two documents he requested, and they were under no obligation to explain or verify the content of the documents. Based on the defendants' supporting declarations, the Court concludes that the searches for records responsive to the plaintiff's FOIA requests were reasonable.

### 3. FOIA Exemption 7(C)

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a

connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted). Although the supporting declarations submitted by the defendants barely mention a law enforcement purpose, it is apparent from the plain language of the plaintiff's FOIA requests that responsive records – a criminal indictment and J&C – were compiled for law enforcement purposes and thus fall within the scope of Exemption 7.

FOIA Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular information, the Court must balance the privacy interests of individuals mentioned in the records against the public interest in disclosure. *See ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). The EOUSA relies on FOIA Exemption 7(C) to withhold the Grand Jury foreperson's signature. Francis Decl. ¶ 9; Kohler Decl. ¶ 7. "This was done to protect the identity of this individual whose, signature was placed on the indictment for law enforcement purposes, while fulfilling the role of foreperson on the Grand Jury that returned an indictment against [the plaintiff] in his underlying criminal case." Francis Decl. ¶ 9. In response to this explanation, the plaintiff explains that he "never seeked [sic] any information on the grand jury foreperson," Pl.'s Opp'n at 3, and does not object to the EOUSA's decision to withhold the foreperson's signature. On review of the EOUSA's supporting declarations and a redacted copy of the indictment, the Court concludes that the EOUSA properly has withheld the foreperson's identity under FOIA Exemption 7(C). *See, e.g., Smith v. Exec. Office for U.S. Attorneys*, 69 F. Supp. 3d 228, 240-41 (D.D.C. 2014) (approving the withholding of the signatures of task force officer, a DEA special agent and a DEA staff member).

## C. The Plaintiff's Privacy Act Claims

The Privacy Act requires federal government agencies to "maintain all records which [they use] in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in [an agency] determination." 5 U.S.C. § 552a(e)(5). An individual may "gain access to his record," *id.* § 552a(d)(1), and "request amendment of a record pertaining to him," *id.* § 552a(d)(2), and the agency shall "promptly[] either . . . make any correction of any portion thereof which [he] believes is not accurate, relevant, timely, or complete; or . . . inform the individual of its refusal to amend the record" as requested, *id.* § 552a(d)(2)(B); *see Doe v. FBI*, 936 F.2d 1346, 1350 (D.C. Cir. 1991) (stating that the Privacy Act "grants individuals the right to obtain access to agency records pertaining to them, and to request amendment of any records they believe to be inaccurate, irrelevant, untimely, or incomplete"). An individual may bring a civil action against an agency in a federal district court if the agency refuses "to amend [the] individual's record in accordance with his request," *id.* § 552a(g)(1)(A), or if the agency

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual[,]

*id.* § 552a(g)(1)(C). If the Court finds that "the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual" for actual damages and the costs of the action. *Id.* § 552a(g)(4).

Notwithstanding the protections ostensibly afforded under the Privacy Act, an agency head may promulgate regulations to exempt certain systems of records if the system of records is

> maintained by an agency or component thereof which performs as
> its principal function any activity pertaining to the enforcement of
> criminal laws, including police efforts to prevent, control, or reduce
> crime or to apprehend criminals, and the activities of prosecutors,
> courts, correctional, probation, pardon, or parole authorities, and
> which consists of . . . reports identifiable to an individual compiled
> at any stage of the process of enforcement of the criminal laws from
> arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2)(C). Pursuant to this authority, the BOP regulations have exempted the Inmate Central Records System from the amendment, accuracy, and civil remedy provisions of the Privacy Act. *See* 28 C.F.R. § 16.97(a)(4), (k).

"[J&C] orders relevant to an inmate are maintained in the BOP's Inmate Central Records System," and the BOP's declarant asserts that these "records are exempt from the amendment, accuracy, notification, and civil remedy provisions of the Privacy Act." Johnson Decl. ¶ 3. The Court concurs. The plaintiff's Inmate Central File, including his J&C, is maintained in a system of records that is exempt from the amendment, accuracy, and civil remedy provisions of the Privacy Act. *See, e.g., Lane v. Fed. Bureau of Prisons*, No. 08-1269, 2009 WL 1636422, at *1 (D.D.C. June 9, 2009), *aff'd per curiam*, No. 09-5228, 2010 WL 288816 (D.C. Cir. Jan. 7, 2010), *cert. denied*, 562 U.S. 863 (2010). And "[h]aving exempted its records from the substantive provision regarding the agency's recordkeeping obligations, [the] BOP effectively deprives litigants of a remedy for any harm caused by the agency's substandard recordkeeping." *Ramirez v. DOJ*, 594 F. Supp. 2d 58, 65 (D.D.C. 2009), *recons. denied*, 680 F. Supp. 2d 208 (D.D.C. 2010), *aff'd per curiam*, No. 10-5016, 2010 WL 4340408 (D.C. Cir. Oct. 19, 2010) (per curiam); *see Jennings v. Fed. Bureau of Prisons*, 657 F. Supp. 2d 65, 72 (D.D.C. 2009). The plaintiff's Privacy Act claim for amendment of any information in the Inmate Central File, *see Skinner v. DOJ*, 584 F.3d 1093, 1098 (D.C. Cir. 2009), his challenge to the accuracy of the relevant

records, *see Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam), and his demand for damages, *see Fisher v. Bureau of Prisons*, No. 05-0851, 2006 WL 401819, at *2 (D.D.C. Feb. 21, 2006), therefore fail.

### III.  CONCLUSION

The defendants have demonstrated their compliance with the FOIA and the plaintiff's failure to show that he is entitled to either amendment of his records maintained in the Inmate Central Records System or damages under the Privacy Act.  Accordingly, their motion for summary judgment will be granted.  An Order is issued separately.

DATE:  September 25, 2015                   /s/
                                           REGGIE B. WALTON
                                           United States District Judge

12